**AT & T WIRELESS PCS, INC., Plaintiff,**

v.

The **WINSTON–SALEM ZONING BOARD OF ADJUSTMENT,** Defendant.

No. 1:97CV01246.

United States District Court, M.D. North Carolina.

July 17, 1998.

Jonathan Edward Buchan, James G. Middlebrooks, Smith Helms Mulliss & Moore, Charlotte, NC, for Plaintiff.

Ronald G. Seeber, Office of City Attorney, Winston–Salem, NC, Nancy Bentson Essex, Poyner & Spruill, L.L.P., Raleigh, NC, Charles C. Green, Jr., Office of Winston–Salem City Attorney, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This action was filed by AT & T Wireless PCS, Inc. (AWS) to appeal a decision by The Winston–Salem Zoning Board of Adjustment (Board) to deny an application for a special use permit for the location of a cellular telephone tower on property owned by the Southeastern Center for Contemporary Art (SECCA). On June 12, 1998, this court held that the Board violated the Telecommunications Act of 1996(TCA), 47 U.S.C. § 332(c)(7) and local zoning law, granted summary judgment for AWS, and issued a Writ of Mandamus directing the Board to grant the application of AWS and to issue a special use permit. The Board has filed a Notice of Appeal from the writ, along with a motion for a stay pending appeal. Oral arguments on this matter were heard July 15, 1998. The court will deny the Board's motion.

■ In order to obtain a stay of a trial court's order pending appeal, the party seeking the stay must demonstrate (1) likely probability of success on appeal, (2) irreparable injury if the stay is denied, (3) other parties to the action will not be substantially harmed by the stay, and (4) the public interest will be served by the granting of the stay. *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970). In deciding the Board's request, the court will consider all relevant factors and conduct a balancing test to determine whether a stay should be issued. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)

## Likelihood Of Prevailing On The Merits

■ The court agrees with the Board that serious and relatively new questions are to be decided upon appeal, questions not yet addressed by a circuit court. Although the district courts are nearly unanimous, there has not yet been an appellate decision defining the proper interpretation and application of the TCA's requirement that a board's rejection of a permit be made in writing; nor is there established precedent for what constitutes a proper remedy for procedural violations of the TCA. Finally, there is also no clear North Carolina precedent governing whether a zoning board may refuse permitting a certain class of structures where the zoning regulations list such structures as permissible, or whether such refusal must be based upon the particular application being made. Although the court disagrees with the Board's arguments, the court recognizes these are valid issues for appeal. The court does not, however, find merit to the Board's constitutional arguments.

The Board asserts,

the court's order raises substantial constitutional questions under the Guaranty Clause and the Tenth Amendment of the U.S. Constitution. The court, in effect, has determined that given the mandate of Congress under the Telecommunications Act, it has the power to decide for itself whether the proposed tower will be in "harmony" with the site and the surrounding area.

(Def.'s Reply Stay Pending Appeal at 4.) The Board misrepresents the court's holding.[1] The court held that based upon North Carolina law, the Board's November explanation was based upon an erroneous burden of presentation. The Board's February explanation disregarded the zoning code's determination of what constituted a permissible use. The record evidence did not rebut the Unified Development Ordinance's (UDO) presumption that AWS's specific tower was harmonious. Rather, the record evidence overwhelmingly supported AWS's arguments.

The Board attacks the court's use of de novo review in remedying the Board's TCA procedural violations. The court's remedy was directed at enforcing Congressional intent while ameliorating the specific harm done by the Board's violation. *See Flue–Cured Tobacco Co-op. Stabilization Corp. v. U.S. EPA*, 4 F.Supp.2d 435 (M.D.N.C.1998) (tailoring remedy to enforce Congress' directive and ameliorate the harm caused by procedural violation). Title 47 U.S.C. § 332(7)(A) prohibits district courts from using the TCA to limit or affect a locality's decision regarding the placement of antenna towers. The TCA does not, however, prohibit a de novo review of the record where a zoning board violates the Act's procedural requirements and violates the locality's zoning regulations and presumptions therein. The court's de novo review derived not from the TCA, but from the court's inherent power to remedy violations of federal law. *See Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (Some federal law "lack[s] express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a rem-

---

1. The Board also erroneously asserts that the court relied upon a letter that was not evidence at the Board's hearing. The court mentioned the letter in a footnote stating the letter was the only evidence, of which the court was aware, that materialized between the Board's November and February decisions. The Board provided no explanation for the divergence in its reasoning between the November hearing and February written decision. The court noted the letter provided no basis for the Board's divergence. There being no evidence explaining the Board's change of reasoning, the court strongly suspected pretext.

edy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem."); *United States v. Field,* 193 F.2d 92, 96 (2nd Cir.1951) (" '[I]t is fundamental that federal courts, in common with other courts, have inherent power to do all things that are reasonably necessary for the administration of justice, within the scope of their jurisdiction.' ") Far from limiting or affecting local law, the court's ruling enforced the UDO's legislative determination that transmission towers were a permissive use on the SECCA property. The court's writ mandates the Board's compliance with local zoning law.

Finally, the Board failed to challenge the constitutionality of the TCA's procedural requirements during the merits of this dispute. The court also finds little merit to the argument that the court's writ, directing a local adjudicative body to abide by a local ordinance, violated the Court's holding in *Printz v. United States,* 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). The novelty of the matters appealed provides modest support for the issuance of a stay.

### Irreparable Injury To The Board

■ The Board presents three claims of irreparable injury arguing first that there exists no zoning precedent for directing an entity to de-construct an object built pursuant to an issued building permit. At oral arguments, counsel for AWS stipulated that if AWS loses, the SECCA tower would come down.

The Board next argues that the court may be directing an improper zoning decision, which would be a per se harm to the public. The court agrees, however, the argument is two edged. AWS and telecommunication consumers are also members of the public that are subject *and entitled* to the proper application of the local zoning ordinance. If the court's direction is not improper, withholding the permit would continue the harm to AWS and the larger community of telecommunication consumers. Either way the court decides this issue, the potential for harming the public interest exists. In judging where the risk should lie, the court relies upon the propriety of its earlier determination.

Finally, the Board argues irreparable damage to the foliage on the SECCA property would result from issuing the permit. Although the court appreciates the value of trees in an urban environment and finds the Board's argument aesthetically persuasive, the legal argument lacks merit. The UDO requires SECCA to obtain a permit to construct a tower, not to remove foliage. The Board has offered no law, ordinance, or regulation which would prevent SECCA from cutting down trees. Further, the Board did not discuss or make findings regarding foliage in its November and February decisions. This factor does not support the issuance of a stay.

### Harm to AT & T Wireless PCS, Inc.

■ Attached to its memorandum in opposition to the Board's motion, AWS provides an affidavit which demonstrates a substantial gap, or "hole," in AWS's radio coverage which would be filled by the proposed SECCA antenna. The hole is an area where AWS customers can neither make nor receive calls. In addition, calls initiated by mobile users when outside the hole are "dropped," that is, disconnected, when the user enters the hole. The affidavit further states that as a result of the gap in coverage, AWS suffers: lost revenue from calls that could have been made on that site, lost revenue from incremental calls that would have been made from neighboring cell sites if the SECCA site were in place to handle "hand-offs" to and from those other sites; expenses associated with acquiring and then losing customers who become dissatisfied with this gap in AWS's service; and lost profits from potential customers who select other service providers because of AWS's perceived inferior service. At oral argument, counsel for the Board argued that the affidavit was conclusory, lacking sufficient foundation, that other factors may be responsible for problems with customer relations, and that AWS's coverage may not be substantially different from other providers in the area. The Board does not submit any evidence rebutting AWS's affidavit. The court agrees that a portion of AWS's affidavit appears speculative. There is, however, sufficient and unchallenged evidence that AWS suffers substantial harm from its inability to construct the SECCA

antenna tower. This factor does not support the issuance of a stay.

**Public Interest**

In Title 47 U.S.C. § 332(c)(7)(B)(v), Congress encoded its clear intent "to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition...." H.R.Conf.Rep. No. 104–458, at 113 (1996); 1996 U.S.C.C.A.N. 124. A stay of the court's writ would result in further delay and burden. The TCA presumes the public interest is promoted by preventing delay and burden. *Accord AT & T Wireless PCS, Inc. v. City Council of Virginia Beach*, 2:97CV391 (E.D.Va. Oct. 14, 1991) (Memorandum Order).

**Conclusion**

After weighing the factors necessary for granting a stay, the court finds insufficient basis upon which a stay pending appeal may be issued. The court will enter an order denying the Board's motion.

**ORDER**

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, the court denies the Motion By The Winston–Salem Zoning Board Of Adjustment For Stay Of Order Directing Issuance Of Special Use Permit [30].

The court directs the clerk of this court to strike the Affidavit of David E. Gall from the official court file [34]. Upon review, the court finds that the affidavit has nothing to do with the merits of Defendant's motion to stay and Defendant does not mention the affidavit in its arguments to stay. The affidavit was not filed or considered during the merits of this dispute.

IT IS ORDERED that Defendant shall have until and including July 24, 1998, to grant the November 6, 1997, Application of the Southeastern Center for Contemporary Art and AT & T Wireless PCS, Inc. for a Special Use Permit and to issue a special use permit for the same.