582 A.2d 427

**James C. O'CONNOR, et al., Petitioners,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1990.
Decided Nov. 9, 1990.

120

James C. O'Connor, Farage & McBride, Philadelphia, for petitioners.

Patricia Krise Burket, Asst. Counsel, with her, Frank B. Wilmarth, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Harrisburg, for respondent.

Donald Blanken, Philadelphia, for intervenor, Philadelphia Elec. Co.

Before SMITH and KELLEY, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

James C. O'Connor and other residents living near the proposed site of an electrical utility substation and control building (protestants) appeal from a decision of the Pennsylvania Public Utility Commission (PUC) that approved an application of the Philadelphia Electric Company (PECO) to obtain exemption from local zoning laws for the proposed facility.[1]

The questions presented are (1) whether the PUC was bound to defer to an opinion expressed by the Pennsylvania Historical and Museum Commission (Historical Commission) that the area in question is of historical significance and that the proposed substation would adversely affect it, and (2) whether the findings and conclusions of the administrative law judge (ALJ) whose initial decision the PUC adopted relating to the reasonable necessity for the selected site and the adequacy of efforts to reduce the environmental incursion of the facility are supported by substantial evidence in the record.

PECO filed an application with the PUC to obtain an exemption from local zoning rules pursuant to Section 619 of the Pennsylvania Municipalities Planning Code (MPC)[2] in order to build a substation[3] on a 3.831–acre site PECO owns in a section of East Goshen Township (Township), Chester County, known as Rocky Hill. Nearby residents filed protests with the PUC, averring that the substation

---

1. The original protest filed with the PUC names as protestants Dr. and Mrs. Walter Malone and Mr. and Mrs. James C. O'Connor. (R.R. 7a.)

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10619. That section provides in part:
   This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

3. PECO proposes to build a 69KV–34KV distribution substation. The high voltage electrical equipment is to be located outdoors, and the control equipment is to be housed within a control building.

would have an adverse visual impact on the area, which they said was of historical value. The Township also filed a protest. The ALJ conducted a public input hearing and five days of evidentiary hearings concerning the application. He denied the request of the Historical Commission to intervene. The PUC reversed his order and allowed intervention, and the Historical Commission presented evidence. That evidence included the prepared testimony of Kurt W. Carr, Chief of the Division of Archaeology and Protection of the Historical Commission, and certain exhibits, including a letter from the Director of the Bureau for Historic Preservation of the Historical Commission to the Secretary of the PUC, stating that the opinion of that office was that "the Rocky Hill Historic District is historically significant and eligible for listing in the National Register of Historic Places as an example of the establishment and modest growth of an important type of community in Chester County, the crossroads hamlet." (Historic Commission Exhibit A–5; R.R. 735a.) The Historical Commission's recommendations for the proposed substation, in order, were (1) build it elsewhere, (2) build it underground or (3) move it to the rear of the property.

PECO presented the expert testimony of two qualified electrical engineers who testified about the need for a substation in the general area because of increased demand. They also testified that the site selected was ideal because the location afforded ease of ingress and egress for transmission lines, the size was sufficient, the cost to develop would be low because the topography was good, the site was acquired amicably for reasonable cost and had enough area for future expansion, and the corner location allowed direct access to streets for distribution lines to run north and south or east and west. Other PECO witnesses testified concerning the site selection from a real estate perspective, comparing the selected location to fifteen alternative sites that had been considered by PECO and rejected. PECO performed test archaeological digs at the site, at the request of the Historical Commission. The Historical Com-

mission agreed with PECO's determination that no significant archaeological resources were present.

At the public input hearing one non-party witness presented a list of thirteen alternative sites. The Township also presented evidence concerning alternative sites, and a witness for the protestants presented another alternative site (Coco site). PECO's witnesses testified in rebuttal to the alternatives presented at the public input hearing and by the Township. PECO did not expressly offer rebuttal with regard to the Coco site. Its cross-examination established, however, that the witness who proposed it had never designed an electrical substation or selected a site for one and had no experience designing transmission lines. It was also established that he did not have an electrical engineering degree that he claimed to have.

■ The ALJ filed an initial decision approving the application subject to the conditions that PECO landscape the site in accordance with landscaping plans submitted by the Township and that noise levels at the property line not exceed levels set forth in the Township ordinance. The protestants filed exceptions to the ALJ's decision with the PUC, and PECO filed reply exceptions. The PUC issued an opinion and order denying the exceptions of the protestants, adopting the decision of the ALJ and approving the application subject to conditions the ALJ imposed. The protestants petitioned this Court for review of the PUC's action; the Township and the Historical Commission did not appeal.[4]

■ The protestants first contend that the PUC must defer to the determinations of the Historical Commission that the Rocky Hill area is of historic significance, that the substation will have an adverse effect on the historical nature of the area, and that the substation should be

4. Our scope of review of an order of the PUC is limited to a determination of whether the PUC violated constitutional rights or committed an error of law or whether its necessary findings were not supported by substantial evidence in the record. 2 Pa. C.S. § 704; *Bell Telephone Company of Pennsylvania v. Pennsylvania Public Utility Commission*, 83 Pa. Commonwealth Ct. 331, 478 A.2d 921 (1984).

located at an alternative site. Section 301(3) of the History Code (Code), 37 Pa. C.S. § 301(3), provides that the Historical Commission shall have the power and duty, among other things, to "[i]nitiate, encourage, support and coordinate and carry out historic preservation efforts in this Commonwealth." Section 508(4) of the Code, 37 Pa. C.S. § 508(4), provides that Commonwealth agencies shall "[i]nstitute procedures and policies to assure that their plans, programs, codes, regulations and activities contribute to the preservation and enhancement of all historic resources in this Commonwealth." The protestants contend that the above sections of the Code empower the Historical Commission to render decisions regarding the effect of a proposed project on the historic resources where a Commonwealth assisted, permitted or contracted project is involved.

Arguing by analogy to this Court's holding in *Del–AWARE, Unlimited, Inc. v. Pennsylvania Public Utility Commission*, 99 Pa. Commonwealth Ct. 634, 513 A.2d 593 (1986), protestants contend that the PUC is bound to respect such determinations of the Historical Commission. In that case the PUC approved the location of a pump house that was part of a project to divert water from the Delaware River to a creek, where it could flow to provide supplemental cooling for the Limerick nuclear generating station. The protestant citizens' group argued in part that the PUC did not adequately consider the environmental impact of the pump house under Pa. Const. art. I, § 27.[5] This Court held that Section 619 of the MPC empowered the PUC to determine only whether the *site* of the pump house was appropriate and in the public interest, not to reevaluate various aspects of the environmental impact of the facility that had been considered by the Pennsylvania Department of Environmental Resources (DER) when it granted construction

5. That section of the Pennsylvania Constitution provides:
    The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic, and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

permits for the project. We held that the PUC was obliged to defer to DER's determinations within its jurisdiction regarding environmental impact. The protestants here contend that the Historical Commission has made a similar determination within its jurisdiction, to which the PUC must defer.

The protestants contend further that although the Pennsylvania Supreme Court held in *Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 454 Pa. 193, 311 A.2d 588 (1973), that art. I, § 27 is not self-executing, but requires legislation to define the values sought to be protected and to establish procedures by which the use of private property can be regulated to protect those values, the History Code, enacted in 1988,[6] is the type of legislation contemplated in the Supreme Court's decision.

The PUC acknowledges that this Court's decision in *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 29–30, 312 A.2d 86, 94 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976), established a three-pronged test for review of governmental actions challenged under art. I, § 27: (1) was there compliance with all applicable statutes and regulations relating to protection of natural resources; (2) does the record show a reasonable effort to reduce environmental incursion to a minimum; and (3) whether the environmental harm would so clearly outweigh the benefits to be derived that going ahead with the project would be an abuse of discretion. If the History Code required the PUC to defer to the Historical Commission, then the PUC's order in this case would not meet the first prong of the *Payne* test.

The PUC asserts, however, that nothing in the Code expressly authorizes the Historical Commission to conduct legal proceedings to determine the environmental impact of development upon a historical resource. The PUC notes that Section 502 of the Code provides in part that the Historical Commission shall have the power and duty to:

6. Act of May 26, 1988, P.L. 414.

(6) Provide information and advice on historic resources and appropriate preservation procedures to public officials, private individuals and organizations.

(7) Advise public officials regarding the planning and implementation of undertakings affecting historical resources.

. . . .

(10) Coordinate and comment upon activities of public officials affecting historic resources and preservation activities.

By the PUC's interpretation, these provisions establish only an advisory role for the Historical Commission, not the power to make determinations binding upon other agencies. The PUC asserts that the ALJ did consider the advice of the Historical Commission, and followed that advice to the extent of requiring PECO to incorporate the landscaping proposals offered by the Township into the final plan for the substation.

Intervenor PECO argues that the jurisdiction and authority of the Historical Commission is vastly different from that of the DER, which was at issue in *Del-AWARE*. DER is statutorily authorized to make findings and determinations regarding environmental impact and to issue permits regarding various matters, including permits for different aspects of the construction at issue in that case,[7] but the Historical Commission is not so authorized. PECO also contends that the Historical Commission's actions in this case do not constitute a "determination", noting that the Historical Commission's witness conceded that no representative of that commission had visited and examined the area.

The only portion of the History Code authorizing the Historical Commission to issue permits is found in Section

7. *See Del-AWARE, Unlimited, Inc. v. Department of Environmental Resources*, 96 Pa. Commonwealth Ct. 361, 365 n. 5, 370 n. 14, 508 A.2d 348, 352 n. 5, 354 n. 14, *petition for allowance of appeal denied*, 514 Pa. 644, 523 A.2d 1132 (1986), (listing construction permits granted by DER and the statutory basis for such permits, in this Court's affirmance of orders of the Environmental Hearing Board upholding DER's actions regarding the same water-diversion project against challenges by citizens' groups).

506(d) of the Code, 37 Pa. C.S. § 506(d), relating to permits for archaeological field investigations on Commonwealth land. Section 507(a) of the Code, 37 Pa. C.S. § 507(a), requires Commonwealth agencies and political subdivisions to notify potential permittees, contractors or others whose activities may affect archaeological sites that the costs of surveys or field investigations should be included in their bids or permit applications. The Code requires agencies and subdivisions to notify the Historical Commission before undertaking any Commonwealth assisted, permitted or contracted projects that may affect archaeological sites or when they learn of any undertaking in connection with such a project that affects or may affect such a site. As noted above, PECO conducted archaeological testing to the satisfaction of the Historical Commission in this case. In addition, Section 512 of the Code, 37 Pa. C.S. § 512, relating to enforcement of historic preservation laws and policies, provides: "The Attorney General, the [Historical] commission, any political subdivision, person or other legal entity may maintain an action in an administrative tribunal or court for the protection or preservation of any historic resource in this Commonwealth."

In our view, the provisions of the History Code noted above support the PUC's position that the role of the Historical Commission is advisory and that it lacks the authority to make determinations binding upon other agencies, such as the PUC. The Code does not empower or require the Historical Commission to grant permits for construction affecting historical resources, and it does not establish procedures by which the Historical Commission can adjudicate disputes. Section 512, by authorizing the Historical Commission, among others, to proceed before administrative tribunals or courts to protect historic resources, implies that the Commission lacks the authority to adjudicate such matters itself. The PUC did not err by concluding that the Historical Commission's opinions in this matter should be considered, but that those opinions were

not binding upon the PUC in its determination of PECO's application for exemption from local zoning laws.

The protestants next note that the ALJ, in discussing the alternative site advanced by the protestants, the Coco site, stated that there was a substantial question regarding PECO's ability to acquire it, that it appeared to be too small and that use of it would result in a cost penalty. The protestants assert that no testimony in the record supports these statements. The protestants also note that, although PECO requested permission to rebut their evidence concerning the Coco site, PECO did not present any rebuttal testimony. A fact finder may draw a negative inference from a party's failure to call an available witness with relevant, noncumulative testimony that ordinarily would be expected to favor the party. *Murphy v. Department of Public Welfare,* 85 Pa. Commonwealth Ct. 23, 31–32, 480 A.2d 382, 387 (1984). Protestants assert that application of that principle to PECO's failure to recall its engineering witnesses to rebut their evidence concerning the Coco site should require such a negative inference and the consequent adoption of their witness' testimony regarding the feasibility of the alternative.

The PUC responds that the statements of the ALJ (which were not findings of fact) were supported in the record, noting that the protestants' Exhibit No. 8, a communication from the realtor involved to Mr. O'Connor, indicated that the price was $350,000 and that the net usable land of the lot was approximately 2.62 acres. PECO's evidence was that the ultimate configuration of the proposed substation would require three acres. The PUC asserts that the cost of purchasing the property speaks for itself. PECO refers to questions, noted above, concerning the qualifications of that witness that it raised on cross examination and later. It notes also that the Township solicitor later corrected a statement by the protestant's witness that the Coco site would not affect residential areas, noting that the map of the site showed that it was contiguous to a residential property.

The PUC also contends that no legal authority required PECO to investigate the site suggested by the protestants. The requirement of Section 619 of the MPC is that the PUC determine that "the proposed situation of the building is reasonably necessary for the convenience or welfare of the public." Under the PUC's precedent on this subject, a utility seeking Section 619 zoning exemption must demonstrate "reasonable necessity" for a particular location, not "absolute need":

The Company must show that it has made a reasonable decision, not the best possible decision. Evidence of an alternative may be the basis for questioning the reasonableness of the Company's decision but mere existence of an alternative site does not invalidate the company's judgment.

*Re Philadelphia Suburban Water Co.*, 54 Pa. PUC 127, 132 (1980). The PUC and PECO both point to the extensive evidence presented by PECO's witnesses as to why the site chosen was desirable and reasonable. Concerning negative inferences, the PUC notes that the principle cited by protestants is that a fact finder *may* draw such an inference, not that he or she must.

The PUC is correct that Section 619 of the MPC does not require a utility to prove that the site it has selected is absolutely necessary or that it is the best possible site. If the PUC's finding that the site chosen is reasonably necessary is supported by substantial evidence, this Court will not disturb that finding. Substantial evidence is that quantum of evidence that a reasonable mind might accept as sufficient to support a conclusion. *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 128, 413 A.2d 1037, 1047 (1980). PECO's extensive evidence concerning its reasons for selecting the site at issue here and its consideration of various possible alternatives, once credited by the fact finder, constituted substantial evidence. Further, as the PUC correctly notes, there is absolutely no requirement that a fact finder draw a negative inference from a failure to call or recall a witness.

*Murphy,* cited by the protestants for that proposition, also states: "We stress this rule only states that an inference may be drawn from a party's failure to produce a particular witness. The rule does not call for the creation of a presumption which shifts a burden of proof." 85 Pa. Commonwealth Ct. at 31 n. 7, 480 A.2d at 387 n. 7.

■ Finally, the protestants assert that the screening and landscaping for the substation pursuant to the proposal made by the Township and incorporated into the final plan by the PUC's order is inadequate. They list the height of the structures and of the trees and berm proposed to demonstrate that the trees will not completely screen the structures. The PUC denied protestants' exceptions to the ALJ's findings that PECO had in the past constructed similar projects in conformity with the surroundings, and it would do so in this case. In its brief here, the PUC asserts that the protestants are asking this Court to engage in de novo fact-finding, beyond our scope of review. PECO asserts that the landscaping provisions incorporated in the plan are reasonable and adequate to reduce the environmental incursion, under the second prong of the *Payne* test.

The protestants' position in effect asserts that *Payne* requires that an intrusive facility be completely screened from view by trees or shrubbery. We do not interpret *Payne* to establish such a rigid principle, and we decline to disturb the PUC's conclusion, on the basis of the evidence in the record, that the efforts to reduce the environmental intrusion to a minimum in this case are adequate.

For the foregoing reasons, we affirm the order of the PUC.

ORDER

NOW, November 9, 1990, the order of the Pennsylvania Public Utility Commission at Docket No. A–00110550F022, entered September 6, 1989, is affirmed.