IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Marple,       :
            Petitioner       :
                              :
     v.                   :   No. 319 C.D. 2022
                              :
Pennsylvania Public       :
Utility Commission,        :
            Respondent    :   Argued: October 12, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                     FILED: March 9, 2023

Petitioner Township of Marple (Township) petitions for review of Respondent Pennsylvania Public Utility Commission's (Commission) March 10, 2022 opinion and order (Decision). Through this Decision, the Commission granted Intervenor PECO Energy Company's (PECO)[1] "Petition . . . For a Finding Pursuant to 53 P.S. § 10619"[2] (PECO Petition), which pertained to a proposed gas reliability station

---

[1] The General Assembly has, by virtue of enacting the Public Utility Code (Code), 66 Pa. C.S. §§ 101-3316, given the Commission "all-embracing regulatory jurisdiction over the operations of public utilities [in this Commonwealth]." *PECO Energy Co. v. Twp. of Upper Dublin*, 922 A.2d 996, 1003 (Pa. Cmwlth. 2007). "PECO is a public utility within the meaning of Section 102 of the . . . Code . . . , 66 Pa. C.S. § 102." Decision at 1.

[2] Section 619 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10619. Section 619 states, in relevant part:
**(Footnote continued on next page…)**

(Station) PECO desired to build in the Township. Upon review, we vacate the Decision and remand this matter to the Commission for further proceedings.

## I. Background

PECO initiated this project during the Spring of 2019, when it began searching for a suitable site upon which to build the Station. Reproduced Record (R.R.) at 499a. Shortly thereafter, PECO focused its attention upon a property located at 2090 Sproul Road in the Township (Property), and, on May 31, 2019, an engineering firm drafted a site plan on PECO's behalf, which diagrammed the layout of the Station as envisioned on the Property. *Id.* at 2125a. Per this site plan,

> [t]he . . . Station's design includes two buildings, a "Station Building" and a "Fiber Building." The Station Building will be enclosed and provide weather protection for the pipes, valves, regulators, and electronic equipment necessary for the operation of the Station and provide climate control for the proper functioning of this equipment. [The] Station Building will be locked to protect the equipment from unauthorized access. Additionally, the Station Building will include several sound-dampening features. The Fiber Building will protect sensitive telecommunication equipment necessary to connect the Station to PECO's control room and provide an enhanced aesthetic appeal. The . . . Station will also include a perimeter security fence . . . made of sound-absorbing material that will be constructed and maintained by PECO.

---

> [Article VI of the MPC, which confers zoning powers upon municipalities,] shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the . . . Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

53 P.S. § 10619.

2

Decision at 7 (citations omitted). In June 2020, PECO entered into an agreement of sale with the Property's owner and, in short order, began doing roadwork and pipeline construction to facilitate a connection between its liquefied natural gas facility in West Conshohocken and the Property. *See* R.R. at 231a, 236a-37a, 287a-88a.[3]

PECO then submitted a zoning application to the Township's Zoning Hearing Board (Board), through which it requested a special exception that would authorize it to use the Property as the site of the Station, as allowed under the Township's Zoning Ordinance.[4] *See id.* at 379a-89a. The Board ultimately found that PECO had failed to establish that it was entitled to its desired special exception and, on November 18, 2020, denied PECO's zoning application on that basis. *See id.* at 387a-94a.

On February 26, 2021, PECO filed the PECO Petition with the Commission, through which it requested that the Commission rule that the entire Project was exempt from the Township's Zoning Ordinance. Therein, PECO asked the Commission to rule that proposed locations on the Property for both the Station Building and Fiber Building were both reasonably necessary for the convenience

---

[3] As the Commission explained,

> [t]he gas arriving in the Station will originate from a new PECO liquified natural gas [facility] in West Conshohocken. The gas will travel through a new gas main and will run at a lower pressure than typical of an interstate transmission line. PECO indicated that the purpose of the proposed Station is to reduce gas pressure from a new 12-inch main that connects the West Conshohocken . . . facility and [to] inject [the gas] into the existing 16-inch main serving Marple Township at the point of lowest pressure at the intersection of Lawrence Road and Sproul Road.

Decision at 7 (citations omitted).

[4] Township of Marple Zoning Ordinance, Delaware County, Pa., *as amended* (1997).

3

and welfare of the public, which would have the effect of exempting the buildings from the Zoning Ordinance's strictures. *Id.* at 12a, 20a-21a. Additionally, PECO sought to have the Commission determine that the perimeter security fence qualified as a "facility" under Section 102 of the Code and, thus, that the requirements imposed by the Zoning Ordinance were inapplicable to the fence. *Id.* at 12a, 18a-20a. The Township intervened in the matter, as did a number of *pro se* individuals. The Commission then held a series of hearings and a panel of two administrative law judges (ALJs) subsequently granted the PECO Petition on December 8, 2021. Decision at 4. In essence, these ALJs

> [found] that PECO met its burden of proving that the two buildings associated with the Gas Reliability Station should be exempt from [the] Township['s Zoning Ordinance] because the proposed situation of the buildings is reasonably necessary for the public convenience or welfare of the public. The ALJs initially emphasized the very limited scope of the Commission's inquiry under Section 619 of the MPC. The ALJs stated that as a certificated gas utility within the meaning of the Code, PECO has the authority to build a station along the pipeline to manage the distribution and supply of natural gas in its pipes as long as it is running its facilities in compliance with state and federal regulations. Consequently, the ALJs found that concerns the municipalities and the [*pro se*] Protestants raised about issues related to noise, gas emissions, aesthetics, traffic, and other health and safety concerns were beyond the Commission's review.

Decision at 13 (citations omitted).

PECO, the Township, and Theodore Uhlman, a *pro se* litigant, then filed exceptions to the ALJs' ruling.[5] *Id.* The Commission granted PECO's exceptions,

---

[5] PECO's exceptions called for clarification regarding several parts of the ALJs' ruling, but did not broadly challenge that ruling, while the Township used its exceptions to attack the **(Footnote continued on next page…)**

granted in part and denied in part the Township's exceptions, and denied Uhlman's exceptions in full. *See id.* at 81-83. In response, the Township appealed the Commission's Decision to our Court.[6]

## II. Discussion

On appeal,[7] the Township raises two arguments, which we reorder and summarize as follows. First, the Township claims that the Commission erred by

---

ALJs' reasonable necessity determination, as well as the ALJs' narrow interpretation of the scope of Section 619 proceedings. *See* Decision at 15-55.

[6] Uhlman filed a notice of intervention with our Court on May 6, 2022.

[7] The Commonwealth Court's scope of review of a Commission order is to determine whether the Commission's findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Popowsky v. Pa. Pub*[.] *Util*[.] *Comm*[']*n*, . . . 910 A.2d 38 ([Pa.] 2006). The standard of review to be applied when reviewing a Commission decision is that the Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision on a matter within the Commission's expertise. *City of Lancaster (Water) v. Pa. Pub*[.] *Util*[.] *Comm*[']*n*, 769 A.2d 567 (Pa. Cmwlth. 2001) [(citing *Popowsky v. Pa. Pub. Util. Comm'n*, 706 A.2d 1197, 1201 (Pa. 1997))]. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Borough of E. McKeesport v. Special/Temporary Civ*[.] *Serv*[.] *Comm*[']*n*, 942 A.2d 274, 281 (Pa. Cmwlth. 2008).

*McCloskey v. Pa. Pub. Util. Comm'n*, 127 A.3d 860, 866 n.16 (Pa. Cmwlth. 2015).

We defer to the Commission's interpretation of the Code and its own regulations unless the Commission's interpretations are clearly erroneous. *Coal. for Affordable Util. Servs. & Energy Efficiency in Pa. v. Pa. Pub. Util. Comm'n*, 120 A.3d 1087, 1095 (Pa. Cmwlth. 2015). . . . Such "deference is even more necessary when the statutory scheme is technically complex." *Id.* (internal quotation marks and citation omitted). However, on issues of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.*

**(Footnote continued on next page…)**

declining to consider the Station's potential negative environmental impact upon the public health, safety, and welfare, as well as its effect upon the Township's development goals, as expressed through the Township's Zoning Ordinance and comprehensive plan. Township's Br. at 25-32. Second, the Township asserts that the Commission abused its discretion by determining that PECO had established that it was reasonably necessary for the convenience and welfare of the public to site the Station on the Property. According to the Township, the evidence presented by PECO only established that its selection of the Property as the buildings' site only benefitted PECO itself, not the general public. Furthermore, in the Township's estimation, PECO's putative site search, during which it purported to consider 15 other locations for these buildings, was essentially a sham, as PECO had already chosen the Property before conducting the search and, in doing so, ignored other viable locations and its own search criteria. *Id.* at 19-25.[8]

---

*McCloskey v. Pa. Pub. Util. Comm'n*, 225 A.3d 192, 202 (Pa. Cmwlth. 2020).

[8] In his brief, Intervenor Uhlman broadly echoes and joins in the Township's concerns, including about the inadequacy of the Commission's environmental review regarding the buildings' proposed site, while also stating his intent to "focus on very few points" pertaining to that review. *See* Uhlman's Br. at 2-4. However, Uhlman's brief is deficient in multiple ways. His brief does not include a statement of jurisdiction, a statement of both the scope of review and the standard of review, a statement of the questions involved, a statement of the case, a summary of argument, or a short conclusion stating the precise relief sought, all of which our Rules of Appellate Procedure require parties to include in their appellate briefs. *See* Pa. R.A.P. 2111, 2116-2119. Furthermore, Uhlman does not cite to any law in his brief to support his arguments, other than by expressing his concern at the very end that the Commission's failure to substantively address these environmental concerns will result in "no governmental entity . . . meeting the obligation under section 2 of the Constitution of the Commonwealth of Pennsylvania to act on behalf of the people and review these issues to ensure the public peace and safety." Uhlman's Br. at 3-4. Presumably, this reference is meant to pertain to article I, section 2 of the Pennsylvania Constitution, which provides: "All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends **(Footnote continued on next page…)**

6

It is well settled that, by enacting the Code, the General Assembly intended to vest the Commission with preeminent authority to regulate utilities on a statewide basis. *See Del. Riverkeeper Network v. Sunoco Pipeline L.P.*, 179 A.3d 670, 690-95 (Pa. Cmwlth. 2018). This reflects the reality that

> [l]ocal authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would exercise that power with an eye toward the local situation and not with the best interests of the public at large as the point of reference.

*Duquesne Light Co. v. Upper St. Clair Twp.*, 105 A.2d 287, 293 (Pa. 1954). Indeed, as our Supreme Court has remarked,

> [t]he necessity for conformity in the regulation and control of public utilities is as apparent as the electric lines which one views traversing the Commonwealth. If each [municipality was] to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the [General Assembly] has vested in the . . . Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities.

*Chester Cnty. v. Phila. Elec. Co.*, 218 A.2d 331, 333 (Pa. 1966); *see* 66 Pa. C.S. § 1501 (giving the Commission the power to regulate public utilities' facilities and services throughout Pennsylvania). Accordingly, absent an express statutory

---

they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper." PA. CONST. art. I, § 2. Uhlman, however, neglects to develop his argument on this point in any meaningful way. Accordingly, to the extent that Uhlman sought to raise issues beyond those presented by the Township, we conclude that he has waived them on account of his legally inadequate brief. *Jerry's Bar, Inc. v. Com.*, 172 A.3d 1196, 1198 (Pa. Cmwlth. 2017).

directive to the contrary, municipalities are preempted from regulating public utilities' operations. *See Sunoco*, 179 A.3d at 692, 694-95.

Section 619 of the MPC establishes such a carve-out, however, which gives municipalities the ability to regulate via local ordinance the location of a building that a public utility wishes to build or use, unless the "Commission decide[s] that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public." 53 P.S. § 10619.[9] This exception is one of narrow construction, for "to the extent that Section 619 . . . gives any authority to local governments to regulate public utilities, that authority must be strictly limited to the express statutory language." *Com. v. Del. & H. Ry. Co.*, 339 A.2d 155, 157 (Pa. Cmwlth. 1975). "Section 619 . . . does not require a utility to prove that the site it has selected is absolutely necessary or that it is the best possible site." *O'Connor v. Pa. Pub. Util. Comm'n*, 582 A.2d 427, 433 (Pa. Cmwlth. 1990). In order to satisfy its burden in a Section 619 proceeding, "[t]he [public utility] must show that it has made a reasonable decision, not the best possible decision. Evidence of an alternative may be the basis for questioning the reasonableness of the [utility's] decision but [the] mere existence of an alternative site does not invalidate [its] judgment." *Id.* (quoting *Re Phila. Suburban Water Co.*, 54 Pa. PUC 127, 132 (1980)).

---

[9] The MPC does not provide a definition for "building," so this word "must be construed in accordance with its common and ordinary meaning." *Chamberlain v. Unemployment Comp. Bd. of Rev.*, 114 A.3d 385, 394 (Pa. 2015) (citing 1 Pa. C.S. § 1903). "In ascertaining the common and approved usage or meaning, a court may resort to the dictionary definitions of the terms left undefined by the legislature." *Mountz v. Columbia Borough*, 260 A.3d 1046, 1050 n.4 (Pa. Cmwlth. 2021) (quoting *Leventakos v. Workers' Comp. Appeal Bd. (Spyros Painting)*, 82 A.3d 481, 484 n.4 (Pa. Cmwlth. 2013)). Per Merriam-Webster, a building is "a usually roofed and walled structure built for permanent use (as for a dwelling)." https://www.merriam-webster.com/dictionary/building (last visited March 8, 2023).

Here, there are three parts of the proposed Station that are at issue: the security fence, the Fiber Building, and the Station Building. With regard to the fence, the Commission properly concluded that it is a "facility" and, thus, that it is exempt from regulation by the Township. Section 102 of the Code defines "facilities," in relevant part, as "[a]ll the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility." 66 Pa. C.S. § 102. Reading Section 102 of the Code in conjunction with Section 619 of the MPC leads us to the conclusion that, in the context of public utilities, anything that does not qualify as a building under the latter should be considered a facility under the former. Thus, because the security fence does not fall within the common understanding of what constitutes a building, it is a facility that stands outside the Township's regulatory authority. As for the Fiber Building and Station Building, they are self-evidently buildings, so they are theoretically subject to the Township's Zoning Ordinance pursuant to Section 619.

With this in mind, we turn to the specifics of the Township's first argument, regarding the Commission's treatment of the buildings' potential impact upon the public health, safety, and welfare. As already noted, the Township's position is that the Commission erred by failing to consider evidence regarding the buildings' effect upon the Township's comprehensive plan and Zoning Ordinance, as well as about emissions from on-site heaters, noise, and the impact radius of a potential explosion.

The first portion of this argument is meritless. To reiterate, local ordinances and regulations are applicable only *after* the Commission has concluded that a public utility has not established that it is reasonably necessary to use a specific site for a

proposed building. Furthermore, though the Township maintains that the Commission did not adhere to a relevant policy statement, which provides that, in Section 619 proceedings, the Commission will consider the effect of proposed siting upon local comprehensive plans and zoning ordinances, *see* Township's Br. at 30, it is well settled that policy statements do not legally bind governmental agencies. *Borough of Bedford v. Dep't of Env't Prot.*, 972 A.2d 53, 64 (Pa. Cmwlth. 2009).[10] Given this, the Commission was not required to consider how the Township's comprehensive plan and Zoning Ordinance would be affected by siting the buildings on the Property.

However, as for the Township's concerns regarding potential explosions, noise, and emissions from the Station's buildings, we agree with the Township that the Commission erred when it flatly deemed environmental concerns to be outside the purview of Section 619 proceedings. The Commission concluded that it could not consider such concerns when determining whether there was a reasonable necessity to site the buildings upon the Property, because "[a]ncillary issues unrelated to . . . siting . . . , such as the issues related to the siting or route of the public utility's facilities, public safety, or environmental requirements, are outside the scope of a Section 619 proceeding." Decision at 44. In addition, the Commission stated that

> [though it] is not empowered under Section 619 of the MPC to evaluate the various aspects of the environmental impact of a project, it defers to the determinations of those agencies with jurisdiction over such environmental

---

[10] The Supreme Court has "recognize[d] that in some situations it may be difficult to differentiate between administrative regulations and statements of policy which are not rules or regulations[.]" *Pa. Hum. Rels. Comm'n v. Norristown Area Sch. Dist.*, 374 A.2d 671, 677-78 (Pa. 1977). The Township, however, does not argue that the Commission policy statement the Township refers to in its brief is actually a rule or regulation, *see* Township's Br. at 30-32, so we assume without deciding that it is, in fact, a policy statement.

10

> impacts, including the Pennsylvania Department of Environmental Protection . . . . Moreover, . . . granting PECO an exemption from zoning requirements related to the buildings does not exempt PECO from compliance with the Commission's Regulations or the Code or regulation by any other agencies responsible for health and safety.

*Id.* To the contrary, in proceedings of this nature, the Commission is *obligated* to consider "the environmental impacts of placing [a building] at [a] proposed location," while also deferring to environmental determinations made by other agencies with primary regulatory jurisdiction over such matters. *See Del-AWARE Unlimited, Inc. v. Pa. Pub. Util. Comm'n*, 513 A.2d 593, 596 (Pa. Cmwlth. 1986). The source of the Commission's responsibility to conduct this type of review in a Section 619 proceeding is not the MPC itself or another statute; rather, it is article I, section 27 of the Pennsylvania Constitution, which is better known as the Environmental Rights Amendment (ERA).[11] *See City of Lancaster v. Pa. Pub. Util. Comm'n* (Pa. Cmwlth., No. 251 M.D. 2019, filed Feb. 21, 2020), slip op. at 11 n.8, 2020 WL 864986, at \*5 n.8 (stating that existing Section 619 case law "reflect[s] the general point that the [Commission] and its adjudicatory decisions and regulations are subject to the ERA, which is consonant with the Supreme Court's statement in *PEDF* [, see note 13, *infra,*] that all agencies of the Commonwealth are bound by

---

[11] The ERA reads as follows: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people." PA. CONST. art. I, § 27.

The Township invoked the ERA by discussing our extant case law in its appellate brief. *See* Township's Br. at 19-22, 25-26, 32 (citing *Del-AWARE*, 513 A.2d at 595-96; *O'Connor*, 582 A.2d at 428, 432). Additionally, though there was some apparent confusion during oral argument, the only environmental impact-related issues that Township's counsel expressly waived were those pertaining to remediation of soil contamination at the Property.

11

the ERA");[12] *see also Energy Conservation Council of Pa. v. Pub. Util. Comm'n*, 25 A.3d 440, 446-47 (Pa. Cmwlth. 2011) ("Any decision by the [Commission] as to the environmental impact [of a public utility project] must be set against the backdrop of [the ERA].").[13] In other words, a Section 619 proceeding is constitutionally inadequate unless the Commission completes an appropriately thorough environmental review of a building siting proposal and, in addition, factors the results into its ultimate determination regarding the reasonable necessity of the proposed siting. Here, however, the Commission sidestepped this obligation and, though it stated that it would defer to other agencies' determinations regarding environmental issues, *failed to identify any such outside agency determinations* that pertained to explosion impact radius, noise, or heater emissions. *See* Decision at 44-45. The Commission's "deference" in this context thus appears to have been nothing more than illusory and its environmental review substantively nonexistent. *See id.* at 37-45. This failure renders the Decision entirely deficient from a constitutional standpoint.

---

[12] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of the Internal Operating Procedures of the Commonwealth Court of Pennsylvania, 210 Pa. Code § 69.414(a).

[13] We note that *Del-AWARE* and its progeny relied upon a test that was articulated by our Court in *Payne v. Kassab*, 312 A.2d 86 (Pa. Cmwlth. 1973), as the basis for determining the scope of the Commission's environmental review duties in a Section 619 proceeding. *See Del-AWARE*, 513 A.2d at 595-96; *O'Connor*, 582 A.2d at 431-32. Similarly, *Energy Conservation* did not involve a Section 619 proceeding, but nevertheless dealt with broader questions regarding the responsibilities imposed by the ERA upon the Commission, as determined through the *Payne* test. *See* 25 A.3d at 447, 450-52. *Payne* was expressly overruled by our Supreme Court in *Pennsylvania Environmental Defense Foundation v. Commonwealth of Pennsylvania*, 161 A.3d 911 (Pa. 2017) (*PEDF*), but that ultimately has no bearing on the relevance of *Del-AWARE*, *Energy Conservation*, and *O'Connor* to this matter. This is because "th[o]se cases reflect the general point that the [Commission] and its adjudicatory decisions and regulations are subject to the ERA, which is consonant with the Supreme Court's statement in *PEDF* that all agencies of the Commonwealth are bound by the ERA." *City of Lancaster*, slip op. at 11 n.8, 2020 WL 864986, at *5 n.8.

# III. Conclusion

Accordingly, we vacate the Commission's Decision and remand this matter to the Commission, with instructions that it issue an Amended Decision regarding the PECO Petition, which must incorporate the results of a constitutionally sound environmental impact review as to the proposed siting on the Property of the Fiber Building and the Station Building.[14]

_____
ELLEN CEISLER, Judge

---

[14] Due to our resolution of this matter, we decline to reach the Township's remaining issue.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Marple, :
                 Petitioner : 
                 :
     v. : No. 319 C.D. 2022
                 :
Pennsylvania Public : 
Utility Commission, :
                 Respondent :

# **O R D E R**

AND NOW, this 9th day of March, 2023, it is hereby ORDERED that Respondent Pennsylvania Public Utility Commission's (Commission) March 10, 2022 opinion and order is VACATED. It is FURTHER ORDERED that this matter is REMANDED to the Commission, with instructions that it issue an Amended Decision regarding Intervenor PECO Energy Company's "Petition . . . For a Finding Pursuant to 53 P.S. § 10619," which must incorporate the results of a constitutionally sound environmental impact review as to siting the so-called "Fiber Building" and "Station Building" upon the property located at 2090 Sproul Road in the Township of Marple, Pennsylvania.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge